IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANNE LEWIS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 2:04-cv-1015 |
| SHERIDAN BROADCASTING NETWORK, INC., | ) ) Judge Thomas M. Hardiman ) ) |
| Defendant. | ) ) |

## OPINION

### I. Introduction

Plaintiff Mary Anne Lewis (Lewis) brought this action against her former employer, Sheridan Broadcasting Network (Sheridan), for gender and race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), violations of the Equal Pay Act (EPA), and violations of the Pennsylvania Human Relations Act (PHRA).

Presently before the Court is Sheridan's Motion for Summary Judgement on all Counts. For the reasons that follow, the Court will grant the motion for summary judgment as to Counts I and II (Title VII Hostile Work Environment) and Count V (PHRA). However, the Court will deny the motion as to Count III (Title VII Retaliation) and Count IV (Equal Pay Act).

## II. Facts

The following facts are derived from the evidence of record and are taken in the light most favorable to Lewis, the nonmovant. *See Strozyk v. Norfolk Southern Corp.*, 358 F.3d 268, 277 n.7 (3d Cir. 2004). Lewis is a 45 year-old Caucasian woman who was hired temporarily by Sheridan to work as a news anchor for its American Urban Radio Networks in December 1997. From March 1998 until February 1999, Lewis again worked for Sheridan on a part-time basis. In May 1999, she returned as a part-time anchor and received a full-time position in August of that year.

During her employment with Sheridan, Lewis experienced what she believes was discrimination based on her race and gender. She claims that Sheridan denied her certain employment opportunities and benefits that it extended to African-American employees. Specifically, Sheridan did not send Lewis to cover certain news stories, offer her yearly reviews, or choose her to substitute for a prominent radio host. In addition, Lewis alleges that co-workers made comments to her and to others that constitute race and gender discrimination. Specifically, she claims that Gerry Scott, another anchor and a member of the management team, told Lewis that she did not understand the station's "core audience" and she asked too many questions. Scott said she was "stubborn and hardheaded," and that her desk was a "pile of chaos." Ty Miller, who was not a supervisor, asked Lewis if her parents let her listen to "black music" and told her that the only reason white people would see a certain movie was to "see a black man in chains." In addition, Lewis overheard Miller make a comment to an African-American co-worker, whose wife is Caucasian, about a "white woman whipping a slave."

Lewis complained about her experiences to Sheridan's Human Resources Director on November 9, 2001. Less than two months later, on January 7, 2002, Sheridan terminated Lewis because of what it claims was a reduction in force for financial reasons. On July 5, 2002, Lewis filed both intake and witness questionnaires with the Equal Employment Opportunity Commission (EEOC), alleging retaliation under Title VII and violations of the Equal Pay Act. On March 5, 2003, the EEOC completed the formal charge, which it then sent to the Pennsylvania Human Relations Commission (PHRC).

## III. Discussion

Summary judgment is required on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). An issue is "material" only if the factual dispute "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"Summary judgment procedure is properly regarded not as a disfavorable procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted). The parties have a duty to present evidence; neither statements of counsel in briefs nor speculative or conclusory allegations satisfy this duty. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). After the

moving party has filed a properly supported motion, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must make a showing sufficient to establish the existence of each element essential to her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### A. Timeliness of Plaintiff's Title VII Claims

The language of Title VII is sparse in its guidance on what constitutes a formal charge with the EEOC, stating merely that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. §2000e-5(b). Similarly, the Code of Federal Regulations states that "a charge shall be in writing and signed and shall be verified" and it "shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 C.F.R. §§1601.9 and 1626.6. In *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983), the Court of Appeals for the Third Circuit interpreted the statute in considering the types of allegations that satisfy the charge requirement: "[i]n order to constitute a charge that satisfies the requirement of section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Id.* at 99.

A charge satisfying the foregoing requirements must be timely filed with the EEOC. "[I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. §2000e-5(e)(1). Recognizing the widespread interest in pursuing

4

fair employment practices, 29 C.F.R. §1626.10 permits the EEOC to enter into agreements with state and local fair employment practices agencies. Under such agreements, the requirement of §2000e-5(e)(1) that a charge must first be filed with the State to trigger the 300 day limitations period is satisfied by filing with the EEOC. "When a worksharing agreement with a State agency is in effect, the State agency will act on certain charges and the Commission will promptly process charges which the State agency does not pursue. Charges received by one agency under the agreement shall be deemed received by the other agency for purposes of §1626.7." The Third Circuit, in addressing the timeliness of charges filed in States with such agreements, held that "in a state such as Pennsylvania which has an agency performing functions similar to those of the EEOC, the time for filing is extended to 300 days . . . ." *Callowhill v. Allen-Sherman-Hoff Co., Inc.*, 832 F.2d 269, 271 (3d Cir. 1987).

Although Lewis filed an intake questionnaire and a witness questionnaire on July 5, 2002, an official charge was not filed with the EEOC until March 5, 2003. Based on these facts, Sheridan argues that all of Lewis' claims are time-barred because she failed to file a proper charge with the EEOC within 300 days of the alleged violation. In support of this argument, Sheridan cites Third Circuit precedent, along with cases from other jurisdictions, which hold that intake questionnaires are insufficient to satisfy Title VII's charge requirement. Sheridan argues that the holding of the Court of Appeals in *Michelson v. Exxon Research & Eng'g Co.*, 808 F.2d 1005 (3d Cir. 1987) stands for the broad proposition that intake questionnaires are insufficient to evidence an intent to activate the machinery of Title VII. But the Court in *Michelson*, as conceded by Sheridan's counsel at oral argument, merely applied the *Bihler* standard to the particular facts of that case and held that the plaintiff had not shown facts that would "convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery."

5

*Bihler*, 710 F.2d at 99. The Court in *Michelson* did not hold that intake questionnaires are *per se* insufficient to satisfy the charge requirement. Rather, the Court found that correspondence between the plaintiff and the EEOC failed to, in the words of the *Bihler* decision, "allow the EEOC to investigate immediately [instead of] await further communication from the plaintiff before investigation." *Michelson* 808 F.2d at 1010 (internal citations omitted).

In *Michelson,* the plaintiff contacted the EEOC and was told that the Commission needed more facts before it could begin to investigate his claim. The plaintiff never made further contact with the EEOC, however. Unlike the plaintiff in *Michelson*, here Lewis gave a detailed account of the alleged conduct, including a sworn statement and witness information. Moreover, she promptly answered a subsequent request from the EEOC, which itself referred to her action as a "charge." Therefore, Lewis "manifested an intent to activate the Act's machinery," and the Court finds that the questionnaires submitted to the EEOC constitute a timely filing under *Bihler*. Accordingly, the Court will consider conduct that occurred within 300 days of July 5, 2002, dating back to September 8, 2001, in its consideration of Lewis' claims for hostile work environment and retaliation under Title VII.

### B. Timeliness of Plaintiff's PHRA Claim

Lewis claims that Sheridan's behavior also violated the PHRA. Sheridan responds that any claim under the PHRA is time-barred, since the PHRC did not receive the EEOC charge until well after the 300 day statutory period. In support of this argument, Sheridan cites *Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir.), *cert. denied*, 522 U.S. 914 (1997). The Court of Appeals in *Woodson* addressed the effect of the work sharing agreement between the EEOC and PHRC on the timeliness of charges:

> . . . the worksharing agreement allows a plaintiff to proceed in court under Title VII without first filing with the PHRC. That, however, does not mean that a plaintiff can initiate PHRC proceedings as required by the PHRA merely by filing with the EEOC. Whether a plaintiff has initiated PHRC proceedings under the PHRA is a state law issue. The worksharing agreement says nothing about whether a plaintiff has invoked PHRC procedures if the PHRC has never received his or her claim, nor could it, given that the Pennsylvania Supreme Court held in *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), that EEOC procedures are not a sufficient surrogate for PHRC remedies.

*Id.* at 926-7. At the same time, the Court recognized that, in certain circumstances, equitable arguments could be made to allow a plaintiff to proceed under the PHRA even if the claim was not actually received by the PHRC. Absent such circumstances, however, "if the PHRC does not receive a complainant's claim, then that complainant cannot bring suit under the PHRA." *Id.* at 927.

Lewis has not made any colorable equitable argument in this case. Her official charge, with the indication that she desired to cross-file with the PHRC, was submitted on March 5, 2003. Although the intake questionnaire filed on July 5, 2002 satisfies the requirement of a charge for Title VII statute of limitations purposes, Lewis has offered no evidence that the PHRC actually received her charge prior to March 5, 2003. She has provided the Court with no case law which suggests an applicable exception to the language of *Woodson*. Thus, Lewis' claim under the PHRA is time-barred.

### C. Timeliness of Plaintiff's EPA Claim

Lewis claims that Sheridan violated the EPA by paying her significantly less than it paid male employees for performing comparable jobs. Sheridan counters that Plaintiff's claim is untimely based on the statute of limitations for EPA violations. "Claims arising under the EPA must be filed within two years of accrual of the cause of action, except in cases of willful

violations, in which the limitations period is three years." *Miller v. Beneficial Management Corp.* 977 F.2d 834, 842 (3d Cir. 1992). Sheridan argues both that the two year statute of limitations should apply, and that the statute should run from the time Lewis became aware of the pay discrepancy. Lewis responds that the behavior was a willful violation and argues that infringements of the EPA are "continuing violations" such that the statute of limitations begins to run from the date of the last act of discrimination.

In *Miller*, the Court of Appeals stated unequivocally that "sex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act . . . To hold otherwise would permit perpetual wage discrimination by an employer whose violation of the Equal Pay Act had already lasted without attack for over two years." *Id.* at 843. Thus, the "statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." *Id.* at 844.

In the instant case, Lewis alleges that Sheridan willfully violated the EPA, so the three year statute of limitations applies. She received her last paycheck from Sheridan after her termination in January 2002, which is within three years of July 7, 2004, the date on which this action was filed. Thus, the EPA claim is timely with respect to a willful violation claim.

Despite the timeliness of Lewis' claim that Sheridan willfully violated the EPA, Sheridan seeks summary judgment on the merits, claiming that Lewis has failed to prove that the differences in pay were based on gender. In doing so, Sheridan misconstrues the proper analysis of an alleged EPA violation. EPA claims are viewed under a two-step burden shifting process. "The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work"--work of substantially equal skill, effort and responsibility, under similar working conditions. The burden of *persuasion* then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified

in the Act." *Stanziale v. Jargowsky* 200 F.3d 101, 107 (3d Cir. 2000)(emphasis in original). Lewis has alleged, and cited record evidence to support the allegation, that she was paid tens of thousands of dollars less than a male anchor who was performing a substantially similar job. Sheridan responds that market factors and unequal qualifications led to the disparity, rather than gender. To prevail on summary judgment, however, Sheridan must meet a higher burden:

> The employer's burden is significantly different in defending an Equal Pay Act claim for an additional reason. The Equal Pay Act prohibits differential pay for men and women when performing equal work "except where such payment is *made pursuant to*" one of the four affirmative defenses. 29 U.S.C. § 206(d)(1) We read the highlighted language of the statute as requiring that the employer submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity . . . . More to the point, where, as here, employers seek summary judgment as to the Equal Pay Act claim, they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains.

*Id.* at 107-8 (emphasis in original). Sheridan has not met that demanding burden, and Lewis has alleged facts from which a reasonable jury could conclude that discrimination was the actual reason behind the pay disparity. Specifically, Lewis has pointed to deposition testimony from one of Sheridan's witnesses indicating that the job Lewis performed was essentially the same as the job performed by a male employee who was paid considerably more than Lewis. Thus, Sheridan is not entitled to summary judgment on Lewis' EPA claim.

### D. Hostile Work Environment

Lewis contends that Sheridan discriminated against her on the basis of gender and race in violation of Title VII, 42 U.S.C. §2000e *et seq*. Specifically, as alleged in the complaint and explained by counsel at oral argument, Lewis claims that Sheridan created a hostile work environment through the comments and behavior of its employees.

First, the record demonstrates that the incidents complained of fall outside the 300 day statute of limitations period prior to Lewis' filing of the intake questionnaire with the EEOC. Of the various incidents mentioned in her deposition, those identified specifically by date occurred in 2000 and early 2001. Lewis claims that her meeting with Human Resources, which precipitated the retaliation on January 7, 2002, occurred on November 9, 2001. Although both of these dates fall within the 300 day period, Lewis' counsel conceded at oral argument that these incidents are alleged to be part of the retaliation claim, rather than the hostile work environment claims.

Even if one of the alleged acts occurred during the 300 day period, in order for the incidents outside that time frame to be considered, Lewis would have to prove that they were part of a continuing violation:

> To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, [s]he must demonstrate that at least one act occurred within the filing period: 'The crucial question is whether any present violation exists.' Next, the plaintiff must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.' The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.

*West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754-5 (3d Cir. 1995)(internal citations omitted). The record demonstrates that the conduct of which Lewis complains consisted of, at most, "isolated, intermittent acts of discrimination" rather than "a persistent, on-going pattern." *Id.* Therefore, Counts I and II alleging hostile work environment violations under Title VII are time-barred.

Even assuming, *arguendo*, that Lewis' claims for hostile work environment were timely, she has failed to marshal evidence of a *prima facie* case. As the Court of Appeals stated recently

10

in *Caver v. City of Trenton,* 420 F.3d 243 (3d Cir. 2005): "Under Title VII, the evidence must establish that: (1) [she] suffered intentional discrimination because of [her race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability." *Id.* at 262. Furthermore, the Court emphasized the stringency of the pervasiveness requirement. "In evaluating a hostile work environment claim under . . . Title VII . . . we are mindful that offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 262-3 (internal citations omitted).

> In determining whether the conduct at issue is sufficiently extreme, we consider the totality of the circumstances. As such, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario . . . . The types of circumstances we consider may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 263 (internal citations omitted).

In this case, Lewis has failed to allege behavior that is sufficiently pervasive to be actionable under Title VII. First, the record does not evidence any behavior that was physically threatening or humiliating. Moreover, the actions of which Lewis complains consist of sporadic and individual incidents that fall well short of the requirements noted in *Caver*. Therefore, Sheridan is entitled to summary judgment on Lewis' hostile work environment claims.

### E. Title VII Retaliation

Finally, Lewis claims that she was terminated in retaliation for complaints she made regarding race and gender discrimination to Sheridan's Human Resources Department. Title VII

retaliation claims follow the standard *McDonnell Douglas* three-part burden shifting analysis. "The plaintiff first must establish a prima facie case of retaliation: [she] must show that (1) [she] was engaged in protected activity; (2) [she] was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge." *Woodson*, 109 F.3d at 920. "If the plaintiff succeeds, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994)(internal citations omitted). "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual . . . ." *Id.*

> This basic framework under Title VII illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Id.* at 764.

Although Sheridan has proffered non-discriminatory reasons for Lewis' termination, there are material disputed facts regarding whether those reasons are pretextual. Sheridan terminated Lewis on January 7, 2002, less than two months after her complaint to Human Resources. Sheridan alleges that the termination was part of a financial restructuring of its newsroom, but it has yet to identify the termination of another permanent employee. In sum, Lewis has satisfied

her burden by demonstrating the temporal relationship between her complaint and termination, as well as challenging the scope of the alleged restructuring, such that a factfinder could reasonably disbelieve the proffered reasons or believe discrimination was probably a motivating or determinative cause of the employer's action.

## III. Conclusion

For the foregoing reasons, Sheridan's motion for summary judgment will be granted with respect to Counts I and II for hostile work environment and Count V for violation of the PHRA. However, Lewis' claim for Title VII retaliation (Count III) and violation of the Equal Pay Act (Count IV) will proceed to trial.

An appropriate order follows.

_____
Thomas M. Hardiman
United States District Judge

Dated: November 7, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANNE LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:04-cv-1015 |
| ) | Judge Thomas M. Hardiman |
| SHERIDAN BROADCASTING NETWORK, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 7th day of November, 2005, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11), it is hereby ORDERED that said motion is GRANTED with respect to Counts I, II (Title VII Hostile Work Environment), and V (Pennsylvania Human Relations Act) of Plaintiff's Complaint and DENIED as to Counts III (Title VII Retaliation) and IV (Equal Pay Act).

BY THE COURT:

_____
Thomas M. Hardiman
United States District Judge

cc: All counsel of record